1  KAUFMAN LLC (Pro Hac Vice)
   ALAN H. KAUFMAN
2  445 Park Avenue, 9th Floor
   New York, New York
3  Telephone:    646-820-6550
   Facsimile:    646-820-6568
4
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
5    A Limited Liability Partnership
     Including Professional Corporations
6  ROBERT J. STUMPF, JR., Cal. Bar No. 72851
   Four Embarcadero Center, 17th Floor
7  San Francisco, California  94111-4109
   Telephone:    415-434-9100
8  Facsimile:    415-434-3947

9  Attorneys for Plaintiff Suzanne D. Jackson

10

11                 UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13

14  SUZANNE D. JACKSON,                      |  Civil Action No.
                                             |  3:11-cv-02753-JSW
15                    Plaintiff,             |
                                             |
16       vs.                                 |
                                             |  **FIRST AMENDED COMPLAINT**
17  WILLIAM FISCHER, JON SABES,              |
    STEVEN SABES, DAVID GOLDSTEEN,           |  **and**
18  MARVIN SIEGEL, BRIAN CAMPION,            |
    LONNIE BOOKBINDER, CHETAN                |  **DEMAND FOR JURY TRIAL**
19  NARSUDE, MANI KOOLASURIYA,               |
    JOSHUA ROSEN, UPPER ORBIT, LLC,          |
20  SPECIGEN, INC., PEER DREAMS INC.,        |
    NOTEBOOKZ INC., ILEONARDO.COM            |
21  INC., NEW MOON LLC, MONVIA LLC,          |
    and SAZANI BEACH HOTEL,                  |
22                                           |
                      Defendants.            |
23

24

25

26

27

28

W02-WEST:5DAS1\404200642.3

Case No. 3:11-cv-02753-JSW

# I.    INTRODUCTION

This action arises from a series of investments and loans organized and facilitated by defendant William Fischer, an individual of little known investment experience. Fischer, posing as an investment adviser (but unregistered as such), befriended the plaintiff and proceeded to dissipate over $3,400,000 of her assets.

Fischer was aided and abetted by, and could not have perpetrated his scheme without, the other named defendants who, as officers and directors of the companies in which Jackson's funds were placed, proceeded to waste Jackson's assets while repeatedly misleading her through exaggeratedly optimistic statements about their companies' prospects and withholding material information, including but not limited to the fact that Fischer was a convicted felon.

## PARTIES

1.     Plaintiff Suzanne D. Jackson (Jackson), a widow and mother of two children, is a resident of Atherton, California.

2.     Defendant William Fischer (Fischer) is a self-styled investment manager, broker-dealer and amateur anthropologist whose last known address was 8025 E. Spirit Cove Drive, Duluth, Minnesota.  At all times pertinent to this action he also maintained a residence in Palo Alto, California as well as in Minnesota.

3.     Defendant Jon Sabes is a Minneapolis-based investor and financial services executive with a principal place of business at Opportunity Finance LLC, 60 South Sixth Street, Suite 2540, Minneapolis, Minnesota. At times pertinent to this matter he served as chief financial officer and a director of defendant Specigen, Inc.

4.     Defendant Steven Sabes is a Minneapolis-based investor and financial services/insurance executive with a principal place of business at GWG Life, 220 South Sixth Street, Minneapolis, Minnesota. At times pertinent to this matter he was a member of the board of directors of defendant Specigen.

1       5.     Defendant David Goldsteen (Goldsteen) is a medical doctor, investor and

2  chief executive officer of Global Capital Investments LLC, a merchant banking firm with

3  its principal place of business at 4885 East Harriet Lake Boulevard, Minneapolis,

4  Minnesota.  At times pertinent to this matter he was a member of the board of directors of

5  defendant Specigen.

6       6.     Defendant Marvin Siegel (Siegel) is a pharmaceutical industry executive,

7  consultant, and chief executive officer of Rebbeson, Inc., with a principal place of

8  business at 150 Somerset Drive, Blue Bell, Pennsylvania. At times pertinent to this

9  matter, Siegel was chief executive officer of defendant Specigen.

10      7.     Defendant Brian Campion (Campion) is a business executive and vice

11  president at Ora, Inc., with a principal place of business at 300 Brickstone Square,

12  Andover, Massachusetts.  At times pertinent to this matter, Campion was a founder and

13  vice president for business development at defendant Specigen.

14      8.     Defendant Lonnie Bookbinder (Bookbinder) is a biopharmaceutical

15  industry executive and West Coast Regional Director at Calvert Research, with a

16  principal place of business at 1225 Crescent Green, Suite 115, Cary, North Carolina.  At

17  times pertinent to this matter, Bookbinder was chief executive officer of defendant

18  Specigen.

19      9.     Defendant Chetan Narsude (Narsude) is an internet executive and managing

20  partner and chief technology officer of defendant Monvia LLC with a principal place of

21  business at 2010 Broadway, Redwood City, California. At times pertinent to this matter

22  Narsuede was an officer of defendant PeerDreams, Inc., a co-venturer with defendant

23  Fischer and involved in other investments of plaintiff Jackson in conjunction with

24  defendant Fischer.

25      10.    Defendant Mani Koolasuriya (Koolasuriya) is an internet industry

26  executive and managing partner of defendant Monvia LLC, with a principal place of

27  business at 2010 Broadway, Redwood City, California.  At times pertinent to this matter,

28

Koolasuriya was an executive and director of defendant PeerDreams, a co-venturer of defendant William Fischer and involved in other investments of plaintiff Jackson in conjunction with defendant Fischer.

11.    Defendant Joshua Rosen (Rosen) is a film director and internet entrepreneur with a last known principal place of business at 950 Gilman Street, Berkeley, California.  At times pertinent to this matter, Rosen was founder and chief executive officer of Notebookz and iLeonardo.com, companies in which Jackson invested through William Fischer.

12.    Defendant Upper Orbit LLC (Upper Orbit)is a Minnesota limited liability company that acted as a broker-dealer in some of Fischer's transactions and as a vehicle for his and some of his clients' investments. Its last known place of business was 2751 Hennepin Avenue S., No. 227, Minneapolis, Minnesota.  On information and belief, Upper Orbit's sole member is defendant William Fischer.  At times pertinent to this matter, Upper Orbit was a corporate vehicle used by defendant as a broker-dealer and generally Fisher to take money from the plaintiff and use it for highly speculative investments, the payment of personal expenses of Fischer's, for use by Fischer's personal friends (including at least one other convicted felon), and for other uses unknown to the plaintiff and to this day remaining undisclosed.

13.    Defendant Specigen Inc. (Specigen) is and/or was a Delaware corporation whose last known place of business was 100 Hamilton Avenue, Suite 225-237, Palo Alto, California.

14.    Defendant PeerDreams Inc (Peer Dreams) is and/or was a Delaware corporation whose last known place of business was c/o Monvia LLC, 2010 Broadway, Redwood City, California.

15.    Defendant Notebookz, Inc. (Notebookz) is and/or was a Delaware corporation with a last known principal place of business c/o its registered agent at Corporation Trust, 1209 Orange Street, Wilmington, Delaware.

16.     Defendant iLeonardo.com (iLeonardo) is or and/or was a Delaware corporation with a last known principal place of business c/o its registered agent at Corporation Trust, 1209 Orange Street, Wilmington, Delaware.

17.     Defendant New Moon LLC (New Moon) is part of New Moon Media LLC, 2 West 1st Street, Suite 101, Duluth, Minnesota.  New Moon publishes a variety of internet website magazines and publications oriented towards teenage girls.

18.     Defendant Sazani Beach Hotel (Sazani) is a lodging and hotel facility located at Nungwi Beach, Zanzibar, Tanzania.

## II.     JURISDICTION AND VENUE

19.     This Court has subject mater jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the matter in controversy involves federal questions under the Investment Advisors Act of 1940, the Securities Act of 1933, and the Securities Exchange Act of 1934.  Jackson also seek a declaration of her rights pursuant to 28 U.S.C. § 2201.  This Court has pendent jurisdiction over Jackson's other claims.

20.     Venue is proper in this District pursuant to 28 U.S.C § § 1391(a) and (c).

## III.     GENERAL ALLEGATIONS

**A.     Background**

21.     Jackson is a housewife and mother residing in Atherton, California.  She has no personal experience as an investor.

22.     Until August 2001, Jackson was the wife of David Jackson, founder and chief executive officer of Altos Computer, an international pioneer in the field of networked computing.

23.     Until his untimely death in an accident in August 2001, Mr. Jackson managed the family's financial affairs.

24.     Upon his death, Jackson gradually assumed responsibilities with regard to his estate and the family's assets.

25.     Jackson had no training or experience in investing and generally placed family assets in conservative investments such as tax free bonds.

26.     In or about October 2006, Jackson met defendant William Fischer through a mutual acquaintance.

27.     Fischer proceeded to befriend Jackson and, through that purported friendship, learned of Jackson's lack of business and investment experience. He also learned of her interest in learning to invest, particularly in companies with some social, charitable or other beneficial purpose. Fischer also developed a sense that Jackson had substantial assets that might be accessed for such purposes.

28.     On information and belief, until he met Jackson Fischer in fact had little investment or management experience. Although Fischer spoke of prior investments, he failed to tell Jackson that all of them had failed and that, in each case, the investors' money was lost.

29.     Nevertheless, Fischer portrayed himself to Jackson as a sophisticated investment adviser and securities trader with connections in high tech industries, access to early investment opportunities and contacts with wealthy investors (including but not limited to the defendant Sabes brothers) whom he could attract into the same opportunities.

**B.     Fischer Begins Acting as Fund Raiser and Investment Advisor**

30.     Beginning in the fall of 2006, Fischer began to suggest investments to Jackson. Among the first was defendant Specigen.

31.     Specigen appealed to Jackson's social value investment goals. As portrayed by Fischer, Specigen had access to valuable patents licensed from Montana State University that would produce breakthroughs in the treatment of cancerous and other tumors.

Case No. 3:11-cv-02753-JSW

FIRST AMENDED COMPLAINT
& DEMAND FOR JURY TRIAL

32.     The product areas of interest to Specigen related to targeted drug delivery and imaging agents for the detection and delivery of therapeutic drugs in the treatment of tumors.

33.     In the winter 2006, Jackson made the first of what would eventually grow to over $3,000,000 in loans and investments between December 2006 and April 2008.

34.     Beginning with a $250,000 loan in the form of a convertible promissory note issued by Specigen, the defendant Fischer, acting with and through the other defendants, proceeded to solicit loans and direct equity investments, directly or through defendant Upper Orbit, in:

    a.      Specigen

    b.      Notebookz/iLeonardo

    c.      PeerDreams

    d.      CII/Sazani Beach Hotel,

    e.      New Moon,

    f.      Toppost and

    g.      Rate-It-All, later converted to Double Dutch.

35.     Jackson never received an offering circular, memorandum or other disclosure document at the time each convertible loan and investment was made.

36.     Instead, in each case, Fischer would orally inform Jackson of the investment, why it would succeed, the purported identity of some of the other investors he was attracting (or had claimed to have already attracted) and numerous other claims designed to induce Jackson to invest.

37.     In each case, Fisher followed his oral inducement either with the company name and address to which a designated amount should be sent, or by designating the entity or person to whom the check or transfer should be made, in the later case with Fischer then physically taking the check with him.

38.     In no case did Fischer provide Jackson with any written documentation about the investment, and in most cases subscription agreements and other documentation – if any – were provided after the fact of investment.

39.     Fischer's *modus operandi* for each investment was irregular. Sometimes he would provide a warrant, proposed term sheet or an occasional stock purchase agreement. In many cases, however, Fischer gave Jackson signature pages to sign that were detached from the documents to which he later appended them, or gave her documents to sign sometimes weeks or months after the investment had been made.

40.     On no occasion did Fischer provide disclosure documentation sufficient or appropriate to advise Jackson of the substantive nature of the investments: the risks, the competition, the business plan, pro formas or the other indicia of disclosure expected of professional investment advisers or the issuers of private placement securities.

41.     To the contrary, as described below, Fischer solicited the Jackson investments through an array of materially misleading and deceptive statements, combined with omissions of materially important facts, all of which combined to deny her timely access to facts material to the investment decisions that were being solicited from her.

**C.     The Upper Orbit "Trading Agreement" and "Loan"**

42.     By February 2008, Fischer had ingratiated himself with Jackson and used increasingly manipulative tactics to gain her favor.

43.     Among the tactics he used was offering to assist Jackson's son by suggesting that he could become employed by some of the entities Fischer was creating.

44.     As part of his predation, Fischer styled himself as an anthropologist and escorted Jackson and her family on a trip to Tanzania where Fischer was, through a supposed nonprofit research entity known as Serengeti Genesis (now defunct), attempting to establish a sort of tourist "tent camp" where individuals, for a fee, could feel that they were participating in archaeological "digs."

45.   As a part of this line of manipulation, Fischer suggested that Jackson buy an interest in a hotel that would be linked to his tent camp.

46.   Thinking she was assisting Fischer's research efforts in Africa, Jackson was persuaded to buy an interest in a hotel, defendant Sazani Beach, which was purportedly going to be used as an interim place for visitors to stay while awaiting transport to the camp and which, Fischer assured her, would be profitable and possibly sold at a profit to other investors.

47.   After the Africa site visit, Jackson agreed to invest in the hotel, but Fischer persuaded Jackson it was necessary to do so through a Cayman Islands entity.

48.   Accordingly, Fischer established a company called "CII" in Grand Cayman and gave himself managing control.

49.   In February 2008, Fischer approached Jackson with a new proposition:  that she loan defendant Upper Orbit $1,000,000 in exchange for interest at 8% and a 40% interest in the profits realized by Upper Orbit from "trading equities, making loans and investing in private equity opportunities."

50.   Jackson agreed to the proposal based on Fischer's detailed (and — as it turned out — false) representations about his "years of experience buying, selling, and trading stocks on the NASDAQ and New York Stock exchange."

51.   In or about summer 2008 Jackson became concerned about the so-called "trading account" and asked to have her funds returned.

52.   Fischer claimed that he did not have sufficient "liquidity" and proposed a restructuring of the substantial loans Jackson had made to Upper Orbit.

53.   By mid-2009, Jackson became concerned about missed loan payments, restructurings that never were finalized, and a supposed sale of the Sazani Beach Hotel that did not close. Fischer assuaged her with reports about each defendant company that created the impression that her money was not lost and that further patience would be rewarded.

54. In November 2009, Fischer claimed that he had not had a salary in over two years. He stated that either he would have to collect a salary (presumably from Jackson) or seek employment that would purportedly detract from what he had portrayed as his former career as an investment advisor, dealer, trader and investor in private equities.

55. From that point through the fall of 2010, Jackson increased the pace of her efforts to obtain information about the whereabouts and status of her investments. Directly and through counsel, she sought specific information about her investments – their status, the identity and status of other investors, how much stock and/or debt she owned, whether the companies were profitable or not, the contracts and revenues they were generating or losses incurred, the identity and nature of company partners and customers that might explain their future prospects, the identity and status of approaches to new investors, and other information that would allow her to decide what she might do with respect to each.

56. Jackson's efforts to obtain the information were frustrated throughout 2010 by Fischer's delays, his failures to reply and the failure of the other defendant entities to reply, Fischer's claims that he himself was having difficulty getting the companies to provide the requested information, and/or, in the case of Specigen, New Moon, Peer Dreams, Double Dutch and Notebookz, that revenues or contracts or potential new investors or potential new partners were imminent, improving and about to reach fruition.

57. In the years since her first loan to Specigen in 2006, Jackson at best received sparse, infrequent, sporadic, incomplete, unaudited documents relating to some of her investments but they were insufficient and Fischer failed to respond to her detailed demands for documentation and accounting. Those unanswered requests for information continued through the late fall of 2010.

58. Besides Fischer, the other defendants had effectively treated Jackson as no more than a source of quick and ready cash, to be sought directly or through Fischer, but they provided little more in return than occasional receipts or, after each investment or

cash infusion was made, supplied her with incomplete documents without any prior or subsequent disclosure or accounting, and often with the signature pages unaccompanied by any documents at all.

## FIRST CLAIM FOR RELIEF

### (For An Accounting, against All Defendants)

59.   Jackson realleges and incorporates by reference each of the allegations set forth above.

60.   From the inception of her investments in December 2006 to the present, Jackson has never received an explanation of what was done with her investments, or even documentation of her loans and investments.

61.   The few items of information sporadically provided have been inconsistent, incomplete and, in many cases, incoherent.

62.   As a person purporting to be an investment advisor and as an entity purporting to be her investing partner, Fischer and Upper Orbit had a duty to account to Jackson for the details and whereabouts of the funds invested through him.

63.   As corporations, officers, and directors taking funds from Jackson under the cloak of Regulation D of the Securities Act of 1933, and as entities incorporated under the laws of Delaware, California and Minnesota, the defendants owed but never provided substantial reporting and disclosure information to Jackson. Further, the companies never held annual meetings or made the disclosures required by the laws of their states of incorporation that would have provided such information.

WHEREFORE, Jackson seeks judgment against all defendants for a full accounting, to be provided within 30 days of the entry of judgment, and such other relief as the Court deems fair and equitable.

## SECOND CLAIM FOR RELIEF

### (For Breach of Fiduciary Duty, against Fischer and Upper Orbit)

64.    Jackson realleges and incorporates by reference each of the allegations set forth above.

65.    Fischer and Upper Orbit induced Jackson to make investments in excess of $3,000,000 based on representations that they would act as her partner and investment adviser.

66.    In those capacities, Fischer and Upper Orbit had a duty of candor and a duty to act prudently in the handling of her funds.

67.    Fischer and Upper Orbit acted carelessly and with negligence in the handling of the funds entrusted to them by Jackson for investment.

68.    Fischer and Upper Orbit showed disregard for Jackson's status as a widow and a mother of two children who would be entering college by investing her funds negligently and failing to exercise care and oversight over the investments that were made.

69.    Fischer and Upper Orbit caused Jackson to make loans under agreements drafted by them that carried interest that, other than two payments in June and July 2008, have never been paid.

WHEREFORE, Jackson seeks judgment against defendants Fischer and Upper Orbit in the amount of $8,407,011, inclusive of contractual interest, and such other relief as the Court deems fair and equitable.

## THIRD CLAIM FOR RELIEF

### (For Breach of Fidiciary Duty, Against Defendants Jon Sabes, Steven Sabes, David Goldsteen, Marvin Siegel, Brian Campion and the directors of the other corporate defendants)

70.    At times pertinent to this action, defendants Fischer, J. and S. Sabes, Siegel, Goldsteen, Campion and the directors of the other defendant companies, whose names

1  are not currently known, served as directors of the defendant companies in which Jackson
2  invested.

3       71.    All of the defendant companies were closely held, with few stockholders
4  and no regular public disclosure obligations.

5       72.    The directors of these small, closely held companies were privy to material
6  information about their prospects, operations, capitalization, management and cash flows.

7       73.    The directors of each of the defendant companies had a fiduciary duty to
8  manage the assets of their respective companies prudently and in the interest of the
9  shareholders.

10       74.    The defendant directors had a fiduciary duty to engage competent and
11  experienced managers, to guide the development of the products and technologies in
12  which the shareholders invested, and to assure that the companies' limited assets were
13  deployed in a focused manner designed to produce the products which, in their
14  solicitation of investments, they claimed to be guiding to commercialization.

15       75.    The defendant directors breached their fiduciary duties by (a) failing to
16  oversee the use of funds by their companies, (b) failing to properly capitalize their
17  companies, (c) overseeing Fischer's fundraising in a reckless manner that compromised
18  the chances of the companies attracting further rounds of investors necessary to
19  commercialize their products, (d) failing to enact and implement regular budgets to
20  conserve and direct the prudent use of assets, (e) failing to keep the proper books and
21  records necessary to attract future investors, and (e) compromising further rounds of
22  needed investment through the wholesale disregard of the laws of their respective states
23  of incorporation, thereby imperiling the chances of ever creating companies that would
24  be in a position to undertake public offerings that would return value to early stage and
25  seed investors such as plaintiff Jackson.

26

27

28

1    WHEREFORE plaintiff Jackson seeks rescission of her investments and full

2    reimbursement therefor, with interest per applicable loan documents and statutory interest

3    for funds not subject to contractual rates of interest.

4                                 **FOURTH CLAIM FOR RELIEF**

5    **(For Violations of the California Investment Advisors Code, against Fischer)**

6        76.    Jackson realleges and incorporates by reference each of the allegations set

7    forth above.

8        77.    At all times pertinent to this Complaint, Fisher presented himself to Jackson

9    as, and acted as though he were, an investment advisor and a broker-dealer with extensive

10   trading and investment experience.

11       78.    Under California Corporations Code ("CCC") § 25230, it is unlawful to

12   provide investment advice and to act in any way as an investment adviser without first

13   being licensed by the State of California.

14       79.    At all times pertinent to this Complaint, Fischer was acting as an

15   investment adviser as that term is defined in CCC § 25009.

16       80.    Defendant Fisher is not and was not, at all times pertinent to this

17   Complaint, in compliance with CCC § 25230.

18       81.    CCC § 25235 makes it unlawful for any person acting as an investment

19   adviser to engage in any practices that are fraudulent, deceptive or manipulative.

20       82.    Fischer, in his dealings with Jackson, engaged in a course of conduct that

21   violated CCC § 25235.

22       83.    Fischer's actions not only caused Jackson to lose the entirety of her

23   investments made through him and/or at his suggestion, it also caused her to lose the

24   returns that he promised.

25       WHEREFORE, plaintiff Jackson seeks judgment against Fisher for damages in the

26   amount of the benefit of her bargain ($8,395,430) and such other relief as the Court

27   deems fair and equitable.

28

# FIFTH CLAIM FOR RELIEF

### (For Declaratory Judgment for Breach of the Investment Advisers Act of 1940, against Fischer)

84.     Jackson realleges and incorporates by reference each of the allegations set forth above.

85.     Fischer was obligated to register as an investment adviser as that term is defined in section 202 of the Investment Advisers Act of 1940.

86.     Fischer failed to register, as required by § 203 of said Act.

87.     Section 206(2) of the IAA proscribes "any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client."

88.     The misrepresentations and omissions engaged in by Fischer and Upper Orbit constituted acts of fraud and deceit with regard to Jackson's investments.

89.     Under § 215(b) of said Act, all contracts entered into in violation thereof are null and void.

90.     The directors of the defendant corporations substantially relied on Fischer and Upper Orbit to provide them with funds, and the investments and loans solicited from Jackson were a material portion of the equity the directors were able to raise for their companies.

91.     The directors knew, or recklessly disregarded evidence that, Fischer was acting as an investment adviser to Jackson and others even though he had failed to register under the IAA or applicable state law.

92.     The directors aided and abetted Fischers violations of the IAA and, under IAA sec. 206(d), are liable for Fischer's and Upper Orbit's actions.

WHEREFORE, plaintiff Jackson requests that this Court enter a declaratory judgment that all agreements, in writing or otherwise, between Jackson and defendant Fischer are null and void, and that defendant Fischer be ordered to return all funds invested through him in violation of the Act, with interest, and such other relief as the Court deems fair and equitable.

## SIXTH CLAIM FOR RELIEF

### (For Common Law Fraud, against Fischer)

93.   Jackson realleges and incorporates by reference each of the allegations set forth above.

94.   Fischer held himself out to plaintiff Jackson as a successful and experienced investment adviser, trader of stocks and investor in private equities, including technology and internet investments.

95.   The representations by Fischer with regard to his experience and competence were false and misleading, and made with the express purpose of causing Jackson to invest through him in ventures which he lacked the expertise to evaluate.

96.   Fischer made the false representations with the intent to deceive Jackson to invest through him.

97.   Fischer intentionally engaged in a pattern of withholding material investment information from Jackson both before and after she invested through him.

98.   Fischer's fraudulent action caused financial damages and further harm to Jackson.

WHEREFORE, plaintiff Jackson seeks judgment against defendant Fischer for fraud and award such damages, with interest, and such other relief as the Court deems fair and equitable.

## SEVENTH CLAIM FOR RELIEF

### (Against All Defendants, for Violation of Cal. Corp. Code § 25501.5)

99.   Jackson realleges and incorporates by reference each of the allegations set forth above.

100.   The individual and corporate defendants knew or should have known that Fischer was an unlicensed investment adviser, and failed to disclose that fact to Jackson even though he was acting in their behalf to sell their securities, or the securities of the companies of which they were directors, from which they would benefit.

101.   Said defendants utilized Fischer's services as a "finder," someone who raises money from investors through the sale of unregistered securities.

102.   Said defendants were therefore engaged in the promotion of the sale of unregistered securities.

103.   Under Cal. Corp. Code. § 25501.5, it is unlawful for a person to sell securities to or through an unlicensed broker-dealer.

104.   The law was passed in 2005 in express recognition by the Legislature that California, as a center for startup companies selling unlicensed securities, needed to protect consumers from unlicensed investment advisers and broker-dealers.

105.   The sale of securities by the defendants in violation of the statute caused Jackson, by the end of 2010, to lose the entirety of her investments.

106.   Cal. Corp. Code § 25501.5 requires that transactions in violation of its provisions be rescinded and that all funds invested in violation thereof be returned to the investor, with interest at the legal rate, and that the investors' attorneys fees be included, at the court's discretion.

WHEREFORE, Jackson seeks judgment for rescission of all transactions effectuated by the defendants through and/or with the assistance of Fischer, and that said defendants refund the entirety of the consideration paid to them, directly or through Fischer, with interest at the legal rate, plus attorneys fees actually incurred by the plaintiff, and such other relief as the Court deems fair and equitable.

## EIGHTH CLAIM FOR RELIEF

**(Against All Defendants, For Violation of the Securities Act of 1933 and the Securities Exchange Act of 1934)**

107.   Jackson realleges and incorporates by reference each of the allegations set forth above.

108.   Securities sold in the United States that are not registered with the Securities and Exchange Commission ("SEC") must conform with the provisions of SEC Regulation D ("Reg D").

W02-WEST:5DAS1\404200642.3

Case No. 3:11-cv-02753-JSW

FIRST AMENDED COMPLAINT
& DEMAND FOR JURY TRIAL

109.   Among its multiple requirements are that issuers receive *timely* confirmation and evidence that investors purchasing Reg D securities are qualified do so under the so-called "qualified," "sophisticated" or "accredited" investor guidelines and rules.

110.   Further, under Rule 502 of said Reg D, unregistered securities sold to unaccredited investors must be preceded by disclosures that approximate that which would be disclosed in a formal registration.

111.   At the time that the defendant corporations issued securities to the plaintiff, they (with few limited exceptions) had no evidence that the plaintiff qualified as an accredited investor and therefore were without the requisite knowledge that their sale of securities to her could qualify for any exemption from the disclosure rules of Reg. D.

112.   The defendants therefore did not make adequate disclosure to Jackson, nor receive adequate or timely disclosure from her as to her status as an investor,  before she purchased their securities.

113.   With a few limited exceptions, at the time that their securities were sold to Jackson, they had not been provided, and she did not provide, evidence of her qualification as an accredited investor.

114.   With few exceptions, the securities sold to the plaintiff by the defendants were sold initially without documentation. Any documentation of such sales was, as a matter of pattern and practice, either never provided to the plaintiff, provided in the weeks or months following the sale, or were later appended to signature pages without the actual documents ever having been seen, read or verified by the plaintiff.

115.   The disclosures that they did make, orally and through defendant Fischer, were materially misleading and included specific representations regarding (a) the false claim of the existence of actual or impending investments by others possessing more investment experience who would properly capitalize the companies, which representations falsely suggested that other and more sophisticated investors had vetted

1   the companies and determined their suitability as investments, (b) the extent to which the

2   products were purportedly advanced in their development, by misstating the extent to

3   which they were near commercialization or approaching a level of development

4   necessary to attract additional investors needed for commercialization, (c) the existence

5   or imminence of partners for development that either did not in fact exist or the

6   possibility of which was purely speculative and without reasonable likelihood of

7   materializing, (d) in the case of Specigen, the existence of patent rights sufficient to

8   produce a viable product when in fact, other patent licenses were essential to

9   development but had not been obtained and (e), in the case of Specigen, that errors had

10  been made in fundraising and capitalization that imperiled the company's ability to attract

11  the substantial additional capital needed for further patent rights, testing and regulatory

12  approvals.

13       116.   In addition to the material, fraudulent, manipulative and deceptive

14  representations made, the defendants omitted disclosure of other information that was

15  material to Jackson's investments and that misled and deceived her into making

16  investments that she otherwise would not have made. Those omissions included: (a) the

17  failure to inform Jackson that defendant Fischer had been twice convicted of state and

18  federal felonies and, on information and belief, spent time in prison for his criminal acts;

19  (b) that Fischer's prior investments and investment companies had all failed; (c) that, in

20  the case of Specigen, Fischer was providing material inducements to attract other

21  investors that he was not providing to Jackson, (d) that, in the case of Specigen, the

22  defendant Sabes brothers had been given substantial amounts of equity (on information

23  and belief, a then-controlling share of 27% of the company) in exchange for no

24  consideration to Specigen and that, in fact, the consideration paid went directly to Fischer

25  and/or unrelated entities in which he had a direct or beneficial interest, (e) that, for all of

26  the entities, they had been having difficulties attracting other investors who were given

27

28

1    access to more information than Jackson and (f) that Fischer was favoring certain other

2    investors with disclosures that were not being provided to Jackson.

3         117.   The marketing of securities on the basis of these false, materially

4    misleading statements and material omissions caused Jackson to undertake investments

5    that, in the absence of such false and misleading statements, she would not have made.

6         118.   The false, deceptive and misleading statements and omissions were made

7    with deliberate recklessness and/or with knowledge that they were false and misleading.

8         119.   The false, deceptive and materially misleading statements caused Jackson

9    to lose her investments.

10        120.   The above acts were undertaken in violation of Section 12(a) of the

11   Securities Act of 1933, section 10b of the Securities Exchange Act of 1934 and Rule 10b-

12   5 adopted pursuant thereto.

13        WHEREFORE, the plaintiff asks that this court issue a judgment for the entirety

14   of Jackson's investments, inclusive of contractual interest or, in the case of investments

15   made without contractual interest, statutory interest, as well as legal fees and costs.

### NINTH CLAIM FOR RELIEF

**(Against the Director and Officer Defendants, as Controlling Persons
under the Securities Exchange Act of 1934)**

19        121.   Jackson realleges and incorporates by reference each of the allegations set

20   forth above.

21        122.   Because of the small size and private nature nature of the closely held

22   entities for which Jackson's investments were solicited, the officer and directors of those

23   companies were directly involved in their day-to-day operations as well as in the strategic

24   decisions made by the companies, and were further informed, in a manner that the

25   shareholders were not, of the setbacks and problems faced by said companies.

26        123.   As such, the directors and officers were directly involved in the decisions

27   about what to disclose and what to withhold from shareholders, and were involved as

1   controlling persons within the meaning of sec. 20 of the Securities Exchange Act of 1934
2   ("Exchange Act").

3       124.   Further, the officers and directors of the defendant entities, through the
4   means of defendants William Fischer and Upper Orbit, caused the false, misleading,
5   deceptive statements and omissions set forth in Count Eight to be made to the plaintiff in
6   order to induce her to invest in and/or lend money to the companies that they served as
7   directors.

8       125.   As a result of their failure to comply with section 20 of the Exchange Act,
9   the defendants caused Jackson to lose the entirety of her investments.

10      WHEREFORE, Jackson requests seeks rescission of her investments and
11  judgment against all defendants in the amount of $3,949,383, plus interest, and attorneys
12  fees, and such other relief as the Court deems just and equitable.

13                          **TENTH CLAIM FOR RELIEF**

14         **(Against all Defendants for Common Law Misrepresentation)**

15      126.   Jackson realleges and incorporates by reference each of the allegations set
16  forth above.

17      127.   At all time pertinent to this action, Jackson was a shareholder in defendants
18  Specigen, Notebookz a/k/a iLeonardo, New Moon, Peer Dreams and Upper Orbit.

19      128.   Jackson's investments were made in substantial reliance on representations
20
    made by defendants William Fischer and upper Orbit as agents for the other corporate,
21
22  officer and director defendants.

23      129.   Those representations, as set forth in further detail above under Count
24  Seven, were false, misleading and deceptive.

25      130.   Those misrepresentation of material facts relating to the investments and
26
27  loans solicited were compounded by omissions of material facts, as set forth in more

28

W02-WEST:5DAS1\404200642.3                    -20-

Case No. 3:11-cv-02753-JSW                                          FIRST AMENDED COMPLAINT
                                                                    & DEMAND FOR JURY TRIAL

detail in Count Seven, that were material to the investment and loan decisions solicited from the plaintiff.

131.   The misrepresentations caused Jackson to make investment decisions that she would not otherwise have made, to her deteriment, and with the result that she lost the entirety of her investments.

WHEREFORE, Jackson requests seeks rescission of her investments and judgment against all defendants in the amount of $3,949,383, plus interest, and attorneys fees, and such other relief as the Court deems just and equitable.

Dated:  December 5, 2011

> KAUFMAN LLC
>
> SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
>
> By _____
>         /s/ Robert J. Stumpf, Jr.
>         ROBERT J. STUMPF, JR.
>
>         Attorneys for Plaintiff Suzanne D. Jackson

## DEMAND FOR JURY TRIAL

Jackson hereby demands a trial by jury.

Dated:  December 5, 2011

                      KAUFMAN LLC

                      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                      By                      */s/ Robert J. Stumpf, Jr.*
                                          ROBERT J. STUMPF, JR.

                            Attorneys for Plaintiff Suzanne D. Jackson

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in the County of San Francisco; I am over the age of eighteen years and not a party to the within entitled action; my business address is Four Embarcadero Center, 17th Floor, San Francisco, California 94111-4109.

On **December 5, 2011**, I served the following document(s) described as  on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:  **FIRST AMENDED COMPLAINT and DEMAND FOR JURY TRIAL**

PeerDreams, Inc.
c/o Monvia LLC
Attn:  Mani Kulasooriya
280 Hope Street
Mountain View, CA  94041

Sazani Beach Hotel
c/o Cathryn Al Kanaan
Nungwi
Zanzibar, Tanzania

iLeonardo.com
c/o Joshua Rosen
301 Executive Park Blvd., Apt. 708
San Francisco, CA  94134

Specigen, Inc.
c/o Brian Campion
2109 Carmelita Avenue
Hillsborough, CA  94010

New Moon LLC
c/o Nancy Gruver, CEO
P.O. Box 161287
Duluth, MN  55816

Lonnie Bookbinder
1135 Catherine Lane
Corvallis, MT  59828

**BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 5, 2011, at San Francisco, California.

_Kathryn Campion_
Kathryn Campion

Case No. 3:11-cv-02753-JSW

FIRST AMENDED COMPLAINT
& DEMAND FOR JURY TRIAL